UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 24-cr-10309-MJJ |
| JDM SUPPLY, LLC, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S SENTENCING MEMORANDUM FOR JDM SUPPLY, LLC

The United States respectfully submits this sentencing memorandum in connection with the sentencing of JDM Supply, LLC (JDM or Defendant), which is scheduled for March 25, 2025.

JDM was created by codefendants Daniel and Jeffrey Motha to profit from the COVID-19 pandemic. During its short lifespan, the company was a vehicle to price gouge hospitals in its sales of scarce personal protective equipment (PPE), including N95 masks, as well as a coconspirator in a scheme to sell misbranded N95 masks to a hospital. The company has pleaded guilty to a felony count of misbranding for its role in that scheme, alongside its coconspirator Advoque Safeguard, LLC, which was the manufacturer of the masks. At the time, JDM insiders understood that they were playing with fire; internal text messages include the refrain: "We are all going to jail[.]"

For these reasons, as further set forth below, the government recommends that the Court impose a criminal fine at the low end of the guidelines sentencing range, a mandatory special assessment of $400, and a period of probation of one year.

1

I.   Background

The presentencing investigation report (PSR) in this case accurately sets forth the relevant offense conduct, *see* PSR ¶¶ 5 – 104, which the government will not repeat here.

II.  Sentencing Guidelines

There is a plea agreement between the government and JDM.  ECF No. 3.  In the plea agreement, the parties agree that Defendant's total "offense level" under the guidelines is 22.  *Id.* at 2.  Defendant's base fine level is $2 million, pursuant to U.S.S.G. § 8C2.4(d), and its culpability score is 4, pursuant to U.S.S.G. § 8C2.5.  *Id.*  With this culpability score, the minimum and maximum multipliers are 0.80 and 1.60, respectively.  *Id.*  Given the base fine of $2 million, the guideline fine range is $1.6 million to $3.2 million.  U.S.S.G. § 8C2.7(a) and (b).  The Probation Office has adopted the same guidelines calculation in the PSR, resulting in the same fine range.  PSR ¶ 127.

The parties also agree that the guidelines term of probation is at least one year but not more than five years.  ECF No. 3 at 3; *see also* U.S.S.G. § 8D1.2(a)(1).  The government acknowledges that JDM stopped being an active business years ago.  Under the circumstances, it is fair to question whether a term of probation is necessary here.  Nevertheless, under U.S.S.G. § 8D1.1, the "court shall order a term of probation … (2) if the organization is sentenced to pay a monetary penalty (*e.g.*, restitution, fine, or special assessment), the penalty is not paid in full at the time of sentencing, and restrictions are necessary to safeguard the organization's ability to make payments; … [or] (7) if the sentence imposed upon the organization does not include a fine[.]"  Given this guideline, a term of probation should be part of the sentence for JDM.

III. Section 3553(a) Factors

In determining a defendant's sentence, the Court must consider the guidelines and

2

determine the advisory sentencing guideline range, which, once calculated, establishes the court's "starting point" or "initial benchmark." *See Gall v. United States*, 552 U.S. 38, 49 (2007). Next, the court should consider the various factors set forth in 18 U.S.C. § 3553(a).

With a corporate defendant, the Court's sentencing options are relatively limited. A corporation cannot be imprisoned, and financial penalties mean little to a company, like the one here, that is non-operational. Even so, some penalty is appropriate here given the nature and seriousness of the felony conduct as well as the need to provide deterrence to criminal conduct. Accordingly, the government recommends a fine at the low end of the guidelines range of $1.6 million to $3.2 million, a mandatory special assessment of $400, and a period of probation of one year.

The government acknowledges that the guidelines fine range may overstate JDM's culpability given that it is based on the "gross gain" resulting from the offense, which is $1.9 million. That figure represents the money that JDM and its coconspirator received from Hospital 1 for the misbranded masks but does not account for the fact that the coconspirators returned that money after Hospital 1 detected problems with the masks. (Because the money was returned, the government is not seeking restitution from JDM.) Moreover, the government understands, based on financial information provided by JDM, that the company likely does not have the ability to pay a fine because it is out of business and out of funds. These are fair considerations for the Court to consider in fashioning an appropriate fine for JDM here.

In any event, JDM should face at least some consequence for its felony conduct. JDM conspired—with intent to defraud—to sell masks that it represented were N95s even though they were not to a hospital as the first wave of COVID cases crested. In doing so, JDM and its owners put their own profits ahead of the health and safety of health care providers during a pandemic.

3

JDM did not set out at the beginning to sell misbranded masks to the hospital; the company believed in the representations of Advoque and shared those with the hospital. The problem is that those representations were false—the masks were not N95—and JDM saw red flag after red flag to that effect. Indeed, at one point, Advoque told JDM that the masks were not approved and could not be marketed as N95 respirators. But JDM did not share the truth with the hospital. That is where JDM crossed the line, and that was a serious offense.

The sentence imposed should serve as a warning to companies that might seek to take advantage of the next crisis. It should send the message that companies that choose to enter the medical device business must play by the rules or face the consequences.

IV. Conclusion

For the foregoing reasons, the government recommends a fine at the low end of the guidelines range (unless the Court finds that JDM is not able, and is not likely to be able, to pay a fine), a mandatory special assessment of $400, and a period of probation of one year.

Respectfully Submitted,

LEAH B. FOLEY
United States Attorney
District of Massachusetts

  /s/ William B. Brady
WILLIAM B. BRADY
HOWARD LOCKER
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

Dated: March 11, 2025

**<u>CERTIFICATE OF SERVICE</u>**

   Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                 *<u>/s/ William B. Brady</u>*
                 William B. Brady
                 Assistant United States Attorney

Dated: March 11, 2025